UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| SAMUEL TAYLOR, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:11-CV-174 SNLJ ) |
| MICHAEL MILLER, et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM**

Plaintiff is incarcerated at the Potosi Correctional Center ("PCC"). He brings this 42 U.S.C. § 1983 action against defendants Michael Miller, Joe Arcand, William Milam, Rickey Bailey, and Robert Savage. Each defendant is an employee of the Missouri Department of Corrections ("MDOC"), and plaintiff alleges that they told him to never again write to a particular government official, "Mandi Moore," and that if he did, he would receive a conduct violation and be confined to administrative segregation. Plaintiff alleges that he did write to "Mandi Moore" to complain of the extremely cold temperature in his cell, as well as water leakage, and he alleges the defendants retaliated against him by taking his television and placing him in administrative segregation. Plaintiff has filed a motion for summary judgment (#53). Defendants have filed a motion for summary judgment (#54). The motions are now ripe for disposition.

**I.      Factual Background**

Defendants set forth the pertinent facts in their Statement of Uncontroverted Material Facts (#55-1). Plaintiff has not responded to those facts as required by Federal Rule of Civil

Procedure 56(c)(1) and Local Rule 7-4.01(E).  As a result, and in accordance with those rules, those facts are deemed admitted for the purpose of summary judgment.[1]

Plaintiff claims that, in late 2009, he was writing "Mrs. Mandi Moore" in Constituent Services complaining of the temperature in his cell.  Constituent Services is an office that responds to letters from the Governor's Office, legislators, Director's Office, or offenders only if the offender letters relate to medical issues or allegations of abuse.   Plaintiff admits he found the name "Mandi Moore" from another inmate, not through Constituent Services or any employee of the Department of Corrections.  A "Mandie Morris" is a building administrator in the same building as Constituent Services, but she does not work for Constituent Services and does not receive or respond to offender letters.  On November 18, 2009, plaintiff's television was seized "pending the outcome of grievance procedure."  A review of the relevant Property Removal Slip shows (and plaintiff's deposition testimony confirms) that plaintiff claimed the television had been damaged by water/condensation in the cell.  Plaintiff claims his television was seized by nonparty Officers Glasky and Fox.  The defendants state that it is MDOC policy to seize property underlying an IRR complaint until the grievance process has concluded.  Plaintiff also admits he received the property back after the grievance process was concluded.

On January 10, 2010, Plaintiff received a conduct violation for writing a woman named Maria Irauschek and requesting that she deposit money into offender and fellow inmate Reggie

---

[1] Plaintiff states in his second response to defendants' motion for summary judgment (#62) that it is "not true" that he failed to respond to defendants' Statement of Uncontroverted Material Facts.  However, plaintiff does not appear to respond to the Statement of Uncontroverted Material Facts in that document, nor does plaintiff direct the Court to any document that contains his response.  A review of the docket sheet also does not reveal any response to the Uncontroverted Material Facts by plaintiff.  As a result, the Court can only conclude that plaintiff has not responded to the Facts.

2

Clemens's account in order to avoid plaintiff's obligations to pay certain MDOC fines and fees.[2] Plaintiff was confined to administrative segregation as a result. On January 25, 2010, Defendant Arcand informed Plaintiff not to write Mandie Morriss (the building administrator) anymore because she could not assist him. Plaintiff did not cease writing "Mrs. Mandi Moore" at Constituent Services.

## II.     Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party.

---

[2] The fines and fees plaintiff sought to avoid may include the fees associated with the nine other lawsuits plaintiff has filed and lost while incarcerated in the Missouri Department of Corrections.

3

*Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

**III.    Discussion**

Plaintiff claims that the defendants violated his First Amendment rights when they retaliated against him for continuing to write letters to "Mrs. Mandi Moore" by confiscating his television and placing him in administrative segregation. Defendants contend they are entitled to summary judgment on that claim. Plaintiff also moves for summary judgment. However, plaintiff contends that a "genuine issue of material fact exist[s]" (#53 at p. 1). Thus, he appears to misunderstand the purpose of a summary judgment motion, which is to show that a genuine issue of material fact does *not* exist. Regardless, the Court has reviewed plaintiff's materials in support of his "motion" and will treat those materials as documents supporting his opposition to defendants' motion.

To establish a retaliation claim plaintiff must show: "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (citations omitted). The plaintiff's evidentiary burden is a "heavy" one, and "[m]erely alleging that an act was retaliatory is insufficient." *Id.* Additionally, the discipline must have been that which would "chill a person of ordinary firmness from engaging in that activity." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007).

Plaintiff claims that he was retaliated against in two ways — first, when defendants took his television after plaintiff filed his grievance related to the cold and wet conditions in his cell, and second, when defendants issued him a conduct violation that resulted his confinement to administrative segregation.

Defendants contend that plaintiff cannot show that he was exercising a constitutionally protected right.  Inmates do not have an unlimited First Amendment right.  *Shaw v. Murphy*, 532 U.S. 223, 229 (2001).  However, a prisoner has the "right under the First Amendment to petition for redress of grievances under a prison's grievance procedures." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010).  Further, "conduct that retaliates against the exercise of a constitutionally protected right ... is actionable even if the alleged retaliatory conduct does not itself rise to the level of a constitutional violation." *Van Wyhe v. Reisch*, 581 F.3d 639, 658 (8th Cir. 2009).  *See also Santiago v. Blair*, 707 F.3d 984, 994 (8th Cir. 2013) (quoting *Nelson* and *Van Wyhe*).  The Court is mindful, however, that "because the 'problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems, [the courts] generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." *Nelson*, 603 F.3d at 449 (citation omitted).

Here, plaintiff was writing to a person who did not exist.  No "Mrs. Mandi Moore" worked for the prison system's Constituent Services.  And, even though a woman with a similar name (Mandie Morriss) worked in the same building as Constituent Services, she did not work in the Constituent Services department and could not assist plaintiff.  Plaintiff admits that he was told that no such person worked there and that he should not write to Mandie Morriss on January 25, 2010.  Instead, the letters he sent were forwarded to the appropriate staff person at his prison, and plaintiff received a response from a prison administrator.[3]  Plaintiff was simply advised that he should not direct his correspondence to "Mrs. Mandi Moore" because she did not exist.

---

[3]Notably, plaintiff's letters requested that his letter be forwarded to the appropriate person if the intended recipient could not help him.  That appears to be what happened.

5

Plaintiff was further advised that he was delaying the grievance process by sending letters to Constituent Services that the department could not address.

As the Supreme Court has observed, "[c]ommunication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee." *Procunier v. Martinez*, 416 U.S. 396, 408 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).  Because plaintiff's intended addressee did not exist, it is unlikely that plaintiff was engaged in a constitutionally protected right when he wrote to Ms. Moore.  Notably, plaintiff does not allege that the defendants told him to stop writing to anyone who *did* exist.

However, plaintiff was not just writing to "Mandi Moore."  He was also submitting informal resolution requests ("IRRs") and grievances about his cell conditions and his allegedly damaged television.  Thus, the Court must continue to the next prong of the retaliation analysis.  The Court will address each alleged act of discipline in turn below:

**1. Conduct violation.**  Plaintiff complains that he was issued a Conduct Violation (and assigned to administrative segregation) in retaliation for continuing to write to "Mandi Moore" after being told not to do so.  However, the subject Conduct Violation was issued on January 10, 2010, and it related to plaintiff's improper use of the mails (i.e., he wrote a letter to Maria Irauschek requesting money be sent to another inmate's account to avoid his financial obligations).  That Conduct Violation was issued fifteen days *before* the plaintiff was advised that he should not to write to Mandie Morriss.  Critically, plaintiff does not dispute that he engaged in the conduct that resulted in the Conduct Violation.  A defendant "may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Bandy-Bey v. Crist*, 578 F.3d 763, 766 (8th Cir. 2009) (internal quotations

6

omitted); *see also Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008).  Here, there is ample evidence that plaintiff actually committed the "improper use of mail" violation.  The discipline was not related to plaintiff's allegedly constitutionally protected activity, plaintiff admits that he engaged in the conduct that resulted in the Conduct Violation, and plaintiff cannot show that it was undertaken in retaliation for his complaints.

      **2. Television Seizure.**  Plaintiff also complains that his television was taken in retaliation for his complaining about his cell conditions.  Plaintiff filed an IRR regarding his cell conditions on October 23, 2009.  Plaintiff stated that the wet conditions in his cell damaged his fourteen-year-old television.  (#53-1 at p. 73.)  Defendant Michael Miller responded, stating that he had observed the cell and television and had seen no moisture, and that the television's problem (that the color started to fade out after it had been on for a while) was likely due to its age and that it needed to be repaired or replaced.  On November 4, 2009, plaintiff authored a grievance (an appeal of the IRR decision), which is recorded as having been filed on November 19.  On November 18, plaintiff received a Property Removal Slip stating that his television was being seized.  The slip stated that the "reason for removal" was that plaintiff had claimed it was damaged "due to water/condensation in cell" and that it was being stored "pending outcome of Grievance procedure."  (#55-7.)  Defendants state that it is MDOC policy to seize property underlying a prisoner complaint, and, here, plaintiff had complained that his television had been damaged by the conditions in his cell.  Plaintiff admits there was an investigation and that his television was returned to him (according to the date on the Property Removal Slip) on March 12, 2010.  The removal of his television was not discipline but, defendants contend, simple adherence to MDOC procedure.

7

The "policy" to which defendants refer is contained in IS22-1.1 Offender Property and Control Procedures. Specifically, defendants cite to Section III.G.1.b.3. Section III.G pertains to "Unauthorized Property." Section III.G.1 states as follows:

>   1.  Unauthorized property will be listed on the Unauthorized Property Notice form and will be processed as follows:
>
>       . . .
>
>       b.  Offenders assigned to an institution who receive unauthorized personal property should be notified via a copy of the Unauthorized Property Notice form and should be permitted to have items sent out through the mail, with a visitor, or donate the items to the institution.
>
>       . . .
>
>       (3) Property items with a pending grievance will be retained until final resolution of the grievance process.
>
>       > (A) If upon receipt of the final grievance response, it is determined the property item(s) are not to be allowed, the property officer will be notified by the grievance officer and will complete and forward a new Unauthorized Property Notice form to the offender, notifying the offender he has 30 days to send out the property.

(#55-4 at p. 12). From the plain language of the regulation, it appears that the policy applies not to property that is the subject of any grievance, but rather the policy applies to items that are found to be "unauthorized." Should the offender submit a grievance regarding the "unauthorized property," *then* the policy states that the item "will be retained until final resolution." The regulation is therefore inapplicable to plaintiff's situation.

That defendants' cited policy is inapplicable is not dispositive, however. Plaintiff admitted that it is MDOC policy to seize property that is subject of a grievance, and it is possible another MDOC policy exists that justifies the television's seizure. Even if no written policy exists, it is apparent that plaintiff cannot support his retaliation claim with respect to the

8

television seizure.  At the outset, the Court notes that the removal of plaintiff's television occurred months before he was informed by defendants Arcand and Miller that Mandie Morriss could not help him.  Moreover, plaintiff had been writing letters to "Mandi Moore" since 2008. Even if plaintiff was told to stop complaining to "Mandi Moore" or to stop filing IRRs in October 2009, however, his retaliation claim fails because the removal of the television under these circumstances cannot properly be considered "retaliation."  As indicated above, it is not enough for plaintiff merely to label the removal of his television as "retaliation."  *Meuir*, 487 F.3d at 1119.  Plaintiff admits it was MDOC policy to remove property under the circumstances, and he has set forth no evidence supporting that the defendants removed his television with the intention of punishing him for exercising his right to file IRRs and grievances. Defendant Miller's statements in his IRR and grievance responses suggest that Miller believed the television was malfunctioning due to its age.  The "Property Removal Receipt" clearly states the reason for removal was that it was the subject of grievance procedure — which provides a common sense non-retaliatory motive for its removal even if no written policy exists.  Further, plaintiff admits that the television was returned to plaintiff after the grievance procedure concluded.  Plaintiff's "heavy" burden has not been met here, and the retaliation claim with respect to the seized television must fail on summary judgment.

## IV.   Conclusion

Summary judgment will be granted to the defendants.  A separate order and judgment shall issue.

Dated this  23rd  day of August, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

9